IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE GILL, #N-10443, | |
|     Plaintiff, | |
| v. | Case No. 3:19-cv-1405-NJR |
| DANIEL SULLIVAN, JUSTIN JOHNSON, NANCY RUSH (Special Representative of the late Stewart Rush), SHANE SMITH, DENNIS LARSON, TINA SANDSTROM, and DEREK SMITH, | |
|     Defendants. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the motion for summary judgment filed by Dr. Dennis Larson (Doc. 47) and the motion for partial summary judgment filed by Daniel Sullivan, Justin Johnson, Derek Smith, and Shane Smith (Doc. 63). Plaintiff Tyrone Gill responded in opposition to the motions (Docs. 61 and 70, respectively). Larson filed a reply (Doc. 65), and Gill responded (Doc. 71). On August 17, 2021, the Court held an evidentiary hearing on both motions.

Neither Tina Sandstrom nor Stewart Rush's Special Representative Nancy Rush joined in either motion for summary judgment.

### BACKGROUND

On December 31, 2019, Gill filed a Complaint alleging Defendants were deliberately indifferent to his medical needs and conditions of confinement and that he

1

suffered retaliation for filing grievances during his incarceration at Big Muddy River Correctional Center ("BMRCC"). Following the required screening, he was allowed to proceed on the following claims:

> Count 1: Johnson, Stewart Rush, Shane Smith, and Sullivan were deliberately indifferent under the Eighth Amendment to Plaintiff's conditions of confinement when they spilled bleach on the gallery on October 4, 2019.
>
> Count 2: Tina Sandstrom and Dr. Larson were deliberately indifferent under the Eighth Amendment to Plaintiff's chest pains following the spilled bleach incident.
>
> Count 3: Johnson, Stewart Rush, Shane Smith, and Sullivan retaliated against Plaintiff in violation of the First Amendment by denying him access to ink and grievance forms.
>
> Count 4: Derek Smith and Sullivan retaliated against Plaintiff in violation of the First Amendment by writing a false disciplinary ticket against Plaintiff on September 21, 2019.

(Doc. 1; Doc. 14, pp. 5-7).

Larson's motion for summary judgment argues that Gill never filed a grievance against him for the alleged failure to provide medical treatment, thus he failed to exhaust his administrative remedies as to Count 2. Gill claims he filed three grievances against Larson that were never processed or returned to him.

The motion for partial summary judgment by Johnson, Shane Smith, Sullivan, and Derek Smith admits that Gill exhausted his administrative remedies as to Counts 1 and 4. (Doc. 63, pp. 3-4). These Defendants contend, however, that Gill failed to file a grievance over the denial of ink and grievance forms and thus failed to exhaust his administrative remedies with respect to Count 3. Gill asserts that he filed grievances on

this matter but they were discarded and not processed, and he wrote a letter complaining to Sullivan about the denials that yielded no response.

### A. Medical Grievances (Larson)

**1. October 4, 2019 Grievance (No. 25-10-19):** Gill filed this grievance on the day of the bleach fumes exposure. He stated that Tina Sandstrom ordered the gallery doors to be opened to clear the fumes but refused to treat him for the burning feeling in his lungs and eyes. This grievance did not mention Dr. Larson by name or refer to him. (Ex. A-1, Doc. 48-1, pp. 92-93).

**2. October 7, 2019 Grievance (No. 32-10-19):** This grievance complained about Dr. Larson's treatment of Gill's rotator cuff on September 27, 2019, but did not mention anything about the bleach exposure, thus Larson argues it is irrelevant to the claim in Count 2. Larson notes he first saw Gill for medical care related to the spilled bleach incident on October 8, 2019, and claims Gill did not file any grievance after that date identifying Larson in connection with the alleged lack of medical care for the bleach-related problems. (Ex. B, Doc. 48-3, pp. 108-09).

**3. October 8, 2019, October 9, 2019, and October 16, 2019 Grievances – alleged (no numbers assigned; no copies in the record):** Gill claims he went to sick call on October 8, 2019, and Dr. Larson refused him a breathing treatment when the nurse requested it. Gill claims he filed a grievance on Dr. Larson on **October 8**, and a second grievance on Dr. Larson on **October 9, 2019**, after Larson placed him in the infirmary for chest pain but still refused a breathing treatment. (Doc. 61).

Gill claims he filed a third grievance against Larson on **October 16, 2019**, for again refusing to give him a breathing treatment after Larson stated that Gill's x-ray was clear, but Gill was still having chest pain and difficulty breathing. (Doc. 61, p. 3).

Gill spoke with Mr. Torbeck on October 17, 2019, and was informed that some of his grievances were considered duplicates because he wrote "refile" on them. Torbeck advised Gill to resubmit those grievances. Gill states he never got the grievances back because he was transferred to Menard. IDOC's Cumulative Counseling Summary documents the October 17, 2019 conversation with Torbeck. (Doc. 61, p. 4). Gill did not provide copies of these grievances and they do not appear in the IDOC records other than the reference to duplicate grievances discussed on October 17, 2019.

3

B. **IDOC Defendants**

**1. October 4, 2019 Grievance (No. 25-10-19) (same grievance as noted above in Part A. 1.):** Gill filed this grievance on the day of the bleach fumes exposure which caused him to choke and cough. It claims that Johnson, Smith, and Rush ordered a porter to pour a gallon of bleach down the gallery. These officers refused to send Gill to health care for a breathing treatment and an eye flush. Gill marked the grievance as an "emergency," but it was deemed non-emergency on October 8, 2019. The counselor responded on October 17, 2019. The Grievance Officer recommended denial and the Chief Administrative Officer ("CAO") denied it on October 23, 2019. Gill appealed and on October 28, 2019, the Administrative Review Board ("ARB") denied the grievance, exhausting the appeal process. (Doc. 63, p. 3; Doc. 63-1, pp. 51-54).

**2. September 25, 2019 Grievance (No. 58-10-19):** Gill filed this grievance to contest the disciplinary report issued on September 21, 2019 by Derek Smith for 601 conspiracy and 102b assault. (Doc. 63-1, pp. 24-31). The Grievance Officer recommended it be denied, and on October 23, 2019, CAO Sullivan concurred. (Doc. 63-1, p. 23). The ARB denied Gill's appeal, exhausting this matter. (Doc 63-1, p. 22).

**3. Gill's October 13, 2019 letter to Warden Sullivan**: (Doc. 1, pp. 15, 27; Doc. 70, p. 3). Gill provided a copy of his October 13, 2019 letter to Sullivan complaining that Rush and other segregation staff refused to give him a segregation ink pen or grievance forms. Gill states he never got any response from Sullivan. He borrowed a pen in order to write the letter. (Doc. 1, p. 27).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given

5

another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Gill was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code § 504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably

6

feasible under the circumstances." 20 Ill. Admin. Code § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall

7

expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code § 504.850(f).

If an inmate submits a grievance but never receives a response, then his attempts at exhaustion will be deemed thwarted, and he is allowed to proceed with his lawsuit. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).

## ANALYSIS

### A. Dr. Larson (Count 2)

Gill testified at the recent hearing that the first time he went to sick call for the bleach exposure was on October 8, 2019. Thus, the grievances he filed on October 4 and October 7, 2019 (Nos. 25-10-19[1] and 32-10-19, respectively) obviously could not have

---

[1] Grievance No. 25-10-19 included Gill's complaint that Tina Sandstrom refused to give him any medical treatment for the bleach exposure. Gill exhausted the appeal process for this grievance. (Doc. 48-4, pp. 5-7; Doc. 63-1, pp. 51-52).

included any issue related to Larson's treatment (or lack thereof) related to Gill's exposure to bleach fumes. Gill maintained that he filed three grievances against Larson on October 8, 9, and 16, 2019, for refusing to treat him for inhaling bleach fumes. Gill stated that he had not received any response to those grievances by the time he was transferred from BMRCC to Menard.[2]

On October 17, 2019, Gill talked to Mr. Torbeck (of BMRCC Clinical Services) and complained about these three grievances not being returned. Torbeck advised these grievances had been considered duplicates because Gill had written "refile" on them and told Gill to resubmit the grievances. But Gill testified he never resubmitted them, reasoning that if the grievances were duplicates then prison officials already had his original grievance forms that ought to be properly processed, and it made no sense to resubmit the grievances despite what Torbeck advised. Gill claimed he had submitted these grievances earlier but they "came up missing" out of the "black box" where inmates submit grievance forms, and he wrote "refile" on the forms in question to indicate that he had previously filed the grievance and had not had a response. At the time Gill filed his Complaint with this Court on December 31, 2019, he still had never received these grievances back. He thus never appealed them to the ARB. And he admitted that he never wrote a letter to inquire about the status of those grievances.

Gill's Cumulative Counseling Summary documents the conversation of October

---

[2] The transfer to Menard occurred in late October 2019; the Cumulative Counseling Summary documents that Gill was in Menard segregation as of October 28, 2019. (Exhibit C, Doc. 48-4, pp. 4-5; Doc. 61, p. 5).

9

17, 2019—between Gill and Torbeck—and Torbek noted he recommended Gill resubmit the grievances without the word "refile" on them. (Exhibit C, Doc. 48-4, p. 6). The Cumulative Counseling Summary does not show that Gill had submitted any grievances to complain about Larson in relation to the bleach exposure incident prior to the October 17 conversation with Torbeck. (Exhibit C, Doc. 48-4, pp. 6-7).

Having heard Gill's testimony and reviewed the documentation of his grievance filings, the Court concludes that Gill did not exhaust his administrative remedies as to the claim against Larson in Count 2. Gill's claim that he filed three grievances against Larson *before* he submitted the three grievances he marked "refile" on October 8, 9, and 16, 2019, is simply not credible, considering that he only sought medical care from Larson for the first time on October 8, 2019, and then saw Larson two other times—on October 9 and October 16—the same days he said he filed the grievances he marked as "refiled." Moreover, even if the Court were to believe Gill's account that he submitted an earlier set of grievances that "came up missing," Gill failed to follow Torbeck's advice to submit these grievances again without the "refile" notation in order to have them considered. Had Gill done so, he could have exhausted those claims through the grievance process—yet he chose not to resubmit the grievances. As such, he failed to take advantage of the opportunity that was available to him to exhaust.

Finally, Gill never made any follow up inquiry as to the status of the grievances he states he filed earlier over these incidents, either within the 60-day window following the incidents when the grievance process was open to him (20 Ill. Admin. Code § 504.810(a)) or afterward. He filed his Complaint knowing that he had never received

10

any response to the three grievances he claims to have filed against Larson.

For these reasons, Larson's motion for summary judgment (Doc. 47) will be granted. Larson will be dismissed from Count 2 and from the entire action. Count 2 will proceed against Tina Sandstrom only.

**B. IDOC Defendants Sullivan, Johnson, Stewart Rush, and Shane Smith (Count 3)**

Gill testified at the recent hearing that he submitted a grievance on October 13, 2019, complaining that Rush and other officers had refused to provide him with grievance forms or an ink pen. He placed the grievance form in the "black box" as he had done with other grievances. He obtained the grievance form from the inmate in the next cell; he did not keep a copy of it, and he never got the grievance or any response back. On the same day (October 13, 2019), he wrote the letter to Sullivan complaining about the denial of forms and pens. (Doc. 1, p. 27). The letter to Sullivan did not mention that Gill also filed a grievance over the problem. Gill testified that many times, he would submit grievances via the black box but he would never get them back. Gill stated that any time he mentioned a staff member's name in a grievance, it would come up missing. He added that after he got no response to the first grievance over the denial of pens and forms, he submitted a second grievance but again never got a response. Soon after, he was transferred to Menard.

The IDOC's grievance records do not reflect any grievance filed by Gill over the refusal to provide him with ink pens or grievance forms in October 2019. (Doc. 63-2, pp. 5-7). The records show that Gill filed other grievances complaining about misconduct by specific staff members which were processed. For example, Gill filed Grievance No. 25-

11

10-19 on October 4, 2019 to complain about the bleach exposure; prison officials responded, and Gill exhausted the administrative appeal process on the matter. (Doc. 63-1, pp. 51-54). Gill testified that he also got a response to a grievance he filed complaining about officers not giving water to inmates on the yard, and to other grievances filed while in segregation.[3]

This record and Gill's own admissions demonstrate that prison officials processed and responded to a number of Gill's grievances accusing named staff members of misconduct. Accordingly, the Court finds Gill's testimony that his grievances over the denial of pens and grievance forms were discarded because the grievances named Rush and other staff not to be credible. Gill's claim that he filed a grievance on the matter on October 13, 2019, is further undermined by the fact that when he wrote to Warden Sullivan on the same date about the same problem, his letter failed to mention that he also filed a grievance. (Doc. 1, p. 27). The Court therefore concludes that Gill did not file a grievance over the alleged denial of ink pens and grievance forms on which Count 3 is based. The motion for partial summary judgment filed by Daniel Sullivan, Justin Johnson, Derek Smith, and Shane Smith (Doc. 63) will be granted.

While the Special Representative for deceased Defendant Stewart Rush did not join in the motion for partial summary judgment, the Court finds that Count 3 should also be dismissed against Rush because of Gill's failure to exhaust his administrative

---

[3] *See* Doc. 63-2, pp. 7-8; Doc. 63-1, pp. 46-50 re: Grievance No. 9-10-19 for segregation conditions and staff conduct; Doc. 63-1, pp. 63-66 re: Grievance No. 68-9-19 for staff conduct; Doc. 63-1, pp. 79-84 re: Grievance Nos. 67-8-19 and 66-8-19 for staff conduct; Doc. 63-1, pp. 75-78 re: Grievance No. 51-9-19 for water on segregation yard.

remedies as required by 42 U.S.C. § 1997e(a).

## DISPOSITION

The motion for summary judgment (Doc. 47) and the motion for partial summary judgment (Doc. 63) are **GRANTED**.

Defendant Larson is **DISMISSED** from the action. Count 2 for deliberate indifference shall proceed against Defendant Sandstrom only.

Count 3 is **DISMISSED** from the action. Counts 1 and 4 will proceed against the IDOC Defendants named in those counts.

The matter of exhaustion of administrative remedies now being resolved, the stay on merits discovery is **LIFTED**; the parties can proceed with discovery on the merits of Gill's remaining claims. The Court will enter a separate scheduling order to set forth discovery and dispositive motion deadlines.

**IT IS SO ORDERED.**

DATED: August 26, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**