IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE GILL,<br><br>                 Plaintiff,<br><br>v.<br><br>JUSTIN JOHNSON, NANCY RUSH (as special representative of the late STEWART RUSH), DEREK SMITH, SHANE SMITH, and DANIEL SULLIVAN,<br><br>                 Defendants. | Case No. 19-cv-1405-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Tyrone Gill, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while he was housed at Big Muddy River Correctional Center ("Big Muddy").

This matter is now before the Court on a motion for summary judgment filed by Defendants Justin Johnson, Nancy Rush (as special representative of the late Stewart Rush), Derek Smith, Shane Smith, and Daniel Sullivan (Docs. 113 and 114).[1] Gill filed a response (Doc. 117) in opposition to the motion.

---

[1] Defendant Tina Sandstrom previously filed a motion for summary judgment (Docs. 104, 105). Sandstrom was granted summary judgment on the claim that she was deliberately indifferent to Gill's chest pains in February 2023 (Doc. 118).

## FACTUAL BACKGROUND

Gill brought this action in December 2019 alleging violations of his constitutional rights related to a bleach spill and a disciplinary ticket. As it relates to the remaining Defendants, Gill was allowed to proceed on the following claims:

> Count 1: Justin Johnson, Stewart Rush, Shane Smith, and Daniel Sullivan were deliberately indifferent under the Eighth Amendment to Gill's conditions of confinement when they spilled bleach on Gill's gallery.
>
> Count 4: Derek Smith and Daniel Sullivan retaliated against Gill in violation of the First Amendment by writing a false disciplinary ticket against Gill.

(Doc. 14, p. 5).[2]

During the relevant time periods, Gill was housed at Big Muddy River Correctional Center ("Big Muddy") in the segregation unit (Doc. 114-1, pp. 25, 28). During this time, Daniel Sullivan was the warden at Big Muddy (*Id.*). Justin Johnson, Shane Smith, Derek Smith, and Stewart Rush were all correctional officers at Big Muddy (*Id.* at p. 26).

### A. Disciplinary Ticket

Gill first alleges that Derek Smith improperly issued him a disciplinary ticket in retaliation for filing grievances (Doc. 14, p. 3; Doc. 114-1, p. 54). On September 21, 2019, Gill received a disciplinary ticket issued by Derek Smith for conspiracy to assault based on a recorded phone conversation (Docs. 114-3, p. 2; 114-4). The ticket was based on

---

[2] Count 3, alleging a retaliation claim against Johnson, Rush, Smith, and Sullivan, was previously dismissed for Gill's failure to exhaust his administrative remedies (Doc. 81).

statements Gill made to his brother during a recorded phone call (Doc. 114-4). Gill informed his brother that he took issue with the homosexual activity going on at the prison, and he was "fixin to catch an assault so they can ship me up outta here overnight…." (*Id.* at p. 3). Officials determined that Gill's statements demonstrated an intent to assault an inmate or staff member in an attempt to obtain a transfer to another prison (*Id.* at p. 1). Gill did not deny that he made the statements but testified that he was just "blowing off smoke" and did not assault anyone (*Id.* at p. 1; Doc. 114-1, p. 58).

Gill testified that he believed the charges were false because the language did not amount to a staff assault and the charge did not apply to phone conversations (Doc. 114-1, pp. 58-60). Gill did not physically assault a guard or an inmate (*Id.* at p. 105). Gill testified that Derek Smith's brother previously wrote Gill a ticket for drug paraphernalia, and Smith knew the ticket would not be enough to get Gill transferred from the facility (*Id.* at p. 60). Derek Smith wanted Gill transferred to another facility because of grievances Gill filed against staff (*Id.*). A charge of staff assault would warrant a transfer, according to Gill (*Id.*). Gill was found guilty of conspiracy to commit an assault and received one month C Grade, one month in segregation, as well as contact visit and yard restrictions (Doc. 114-4). Warden Sullivan concurred with the ticket's findings (Docs. 114-1, p. 61; 114-4, p. 2). Gill testified that Sullivan's employee issued the ticket, and he was liable as the overseer of his employees (*Id.* at pp. 61-62). Gill also testified that he informed Sullivan of "all of the retaliation" against him but Sullivan "did nothing" (*Id.* at p. 62). Gill testified that Sullivan did not retaliate against him but Sullivan failed to "step up and protect [him]." (*Id.* at p. 64).

### B. Chemical Spill

On October 4, 2019, inmates in Gill's gallery were talking about sexual activities with each other (Doc. 114-1, pp. 29-30). Other inmates on the gallery, including Gill, started kicking the doors of their cells to drown out the conversations (*Id.*). Correctional officers made rounds through the units, ordering the inmates to stop kicking the doors. But the inmates continued to kick the doors to stop the sexual discussions on the gallery, and the kicking continued for two to three hours (*Id.*).

Gill saw officers, including Johnson, Rush, and Correctional Officer ("C/O") Smith, walk toward the front of the gallery (*Id.* at pp. 30-34). He also saw a porter come onto the gallery with two jugs in his hands, which he believed to be bleach (given the description of the bottle) (*Id.* at pp. 30, 34). The porter walked the gallery, pouring the chemicals from the jugs and started mopping the chemicals into the floor (*Id.* at pp. 31, 34-35). Gill and the other inmates started coughing and choking. Gill witnessed the officers at the front of the gallery laughing while the inmates coughed (*Id.* at pp. 31, 37). Gill admitted that Warden Sullivan was not present during the incident (*Id.* at p. 35).

Gill testified that he believed the guards ordered the porter to pour the bleach to stop the inmates from kicking their cell doors (Doc. 114-1, p. 35). Gill did not see or hear the guards order the porter to pour bleach (*Id.* at pp. 36-37, 71-72). He further acknowledged that there had been complaints of scabies in the cellhouse but testified that the protocol for scabies was to spray the specific cell and bag the infected inmate's property for a period of 30 days (*Id.* at pp. 37-38). Gill testified that, in his experience, the cellhouse was not cleaned for an outbreak of scabies (*Id.* at pp. 38-39). Gill had witnessed

the protocol on numerous occasions (*Id.*).

Instead, Gill testified that he believed the bleach was poured on the floors to stop the inmates kicking their cell doors (*Id.* at p. 35). Gill testified he believed this was the purpose of pouring the bleach because the porter had already mopped the cellhouse that morning (*Id.* at pp. 36, 71). Further, during a normal mopping of the cellhouse, the porter would pour the chemicals into a bucket of water, not directly on the floor (*Id.* at p. 36). Gill also offered grievances from other inmates who indicated that they heard the officers stating that the bleach was poured out in response to the inmates banging on the cells. On October 4, 2019, Devon Freeland submitted a grievance indicating that he heard C/O Randy Smith state that, "I bet this will get their ass off the door," in response to the porter pouring bleach in the gallery (Doc. 117-1, p. 1). Dominique Peoples similarly submitted a grievance indicating that he heard Smith, Rush, and Johnson tell the porter to pour an excessive amount of bleach in the hallway (Doc. 117-2, p. 1). Peoples also indicated that he heard Randy Smith say, "I bet that will get their asses off the door." (*Id.*).

After the bleach was poured down the gallery, the porter mopped the chemicals into the gallery floor (Doc. 114-1, p. 39). Inmates, including Gill, started coughing and choking (*Id.*). The officers stood at the front of the gallery laughing (*Id.* at p. 40). While the porter was mopping, Nurse Tina Sandstrom entered the gallery. Gill testified that he heard Nurse Sandstrom direct the guards to open the doors (*Id.* at p. 40). Nurse Sandstrom testified that when she arrived, she smelled bleach and learned that there had been a bleach spill (Doc. 114-2, p. 18). According to Sandstrom, the doors were already open, and an officer was bringing a fan to remove the chemical smell (Doc. 114-2, p. 20).

After Nurse Sandstrom entered the gallery, the porter retrieved clear water and started pouring the water on the floor in order to mop up the chemicals (Doc. 114-1, pp. 40, 75). The porter went over the floor two or three times with clear water (*Id*. at p. 41). Gill also testified that after Sandstrom entered the gallery, "[t]he officers sensed there was a hazardous situation. They did everything to get the chemicals up and air the place out." (Doc. 114-1, p. 99). Gill acknowledged officers brought in buckets of water to clean up the spill (*Id*.). Later that day, a nurse came to the unit and examined each inmate in the foyer of the unit (*Id*. at p. 42). The nurse also set up appointments for the inmates to see the doctor (*Id*. at pp. 42-43).

Gill testified that the chemicals burned his eyes and his lungs (*Id*. at pp. 41-42). He suffered from coughing and chest pains. He continues to suffer from shortness of breath and chest pains, which he attributes to his exposure to the chemicals (*Id*. at p. 42).

LEGAL STANDARDS

A. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014), citing FED. R. CIV. P. 56(a). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## B. Conditions of Confinement

Prison officials violate the Eighth Amendment when "they are deliberately indifferent to adverse conditions that deny 'the minimal civilized measure of life's necessities.'" *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To succeed on a claim of deliberate indifference to a condition of confinement, a prisoner must show: (1) "a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities" or the denial of basic human needs; and (2) "prison officials [were] deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quotation marks and citation omitted); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). To be found liable "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### C. Retaliation

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). In order to prevail on a claim of retaliation, a plaintiff must show that he "engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022) (quoting *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017)); *Winston v. Fuchs*, 837 F. App'x 402, 404 (7th Cir. 2022) (plaintiff must show the defendant was "motivated to punish him with materially adverse action because he engaged in constitutionally protected activity."). Thus, the plaintiff must set forth a chronology of events and show that his First Amendment activities were a motivating factor for an adverse action. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). In this context, an adverse action is one that would chill or deter a person of ordinary firmness from exercising a First Amendment right. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). A plaintiff may demonstrate retaliation by utilizing circumstantial evidence. *See Kidwell v. Eisenhauer*, 679 F. 3d 957, 965-66 (7th Cir. 2012) (stating that a plaintiff may show retaliation by use of circumstantial evidence). Circumstantial evidence can "include suspicious timing, ambiguous statements, behavior, or comments." *Manuel v. Nally*, 966 F.3d 678, 680 (7th Cir. 2020) (quoting *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)).

ANALYSIS

Again, Gill's remaining claims include his conditions of confinement claim for the bleach spill in his unit (Count 1) and his retaliation claim for the disciplinary ticket he received for conspiracy to commit an assault (Count 4).

A. Conditions of Confinement (Count 1)

1. *Correctional Officers*

Simply put, there are issues of fact that preclude summary judgment as to the claims in Count 1 against Shane Smith, Justin Johnson, and Stewart Rush. Defendants argue that Gill lacks evidence that the officers were personally involved in the spill or that they ordered the porter to pour the cleaner on the floor. They argue that there were reports of scabies in the gallery, which warranted cleaning of the cellhouse, and the porter's actions were a reasonable and responsible response to the scabies outbreak. They further argue that this scenario is supported by the testimony of Nurse Sandstrom, who arrived just after the cleaner was poured and witnessed officers opening doors and bringing a fan in to air out the cellhouse (Doc. 114-2, pp. 18, 20-21). She testified that the gallery was a "madhouse" and the officers were trying to get the fumes out of the gallery (*Id*. at p. 47).

But Gill offers evidence from which a jury could find that Defendants acted with deliberate indifference and that Defendants were personally involved in the bleach spill. Although the porter poured the bleach down the gallery, Gill testified that he believed the porter acted on the instructions of the correctional officers. Mere speculation is not enough to support a claim, but Gill offers evidence from which a jury could find that the

porter acted at the direction of the officers. Gill testified that the porter had already mopped the gallery that morning and normally poured cleaner into a bucket, rather than directly on the floor as the porter did in this instance (Doc. 114-1, p. 36). He also witnessed the officers laughing as the porter poured the cleaner on the floors. Although Gill acknowledged that he did not hear the defendants order the porter to pour the chemicals on the gallery (*Id.* at p. 37), he offered the grievances of two other inmates who did overhear the guards (Docs. 117-1, 117-2). Inmate Devon Freeland stated in his grievance that correctional officers Rush, Johnson, and Smith directed the porter to pour pure bleach on the floors (Doc. 117-1, p. 1). A grievance filed by inmate Dominque Peoples also stated that he overheard Smith, Rush, and Johnson tell the porter to pour bleach in the hallway (Doc. 117-2, p. 1). Both grievances also maintained that Correctional Officer Randy Smith stated that the chemical spill would cause the inmates to stay away from the doors (Docs. 117-1, p. 1; 117-2, p. 1). Thus, Gill has offered evidence from which a jury could find a "causal connection or affirmative link between" the chemical spill and the defendant officers. *Arnett v. Webster*, 658 F.3d 742, 759 (7th Cir. 2011).

Gill did acknowledge that there were complaints about scabies in the gallery, but he had previously seen officials deal with scabies, and the protocol was to spray the cell and bag the property, instead of pouring bleach directly on the floors throughout the gallery (*Id.* at pp. 37-38). The defendant officers fail to offer any evidence to dispute Gill's testimony regarding the protocol for dealing with scabies.

Viewing the evidence in the light most favorable to Gill, a jury could find that the defendant officers were aware that pouring the chemicals would cause injury to the

inmates, including Gill, yet directed the porter to pour the chemicals on the floor.[3] There is also unrebutted testimony from Gill that suggests the spill was not in response to a scabies outbreak as Defendants allege in their brief.

There are also issues of fact as to whether the conditions were sufficiently serious. The defendant officers argue that the conditions were not of a substantial duration because the porter immediately mopped the area, the officers opened doors and brought in fans to air out the gallery, and Gill received medical care for his exposure. Although Gill acknowledged that the duration was short, a condition can still be sufficiently serious depending on the nature of the condition, the extent of the condition, and the risks to the plaintiff. *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012); *Jacobson v. Cathcart*, Case No. 10-13046, 2014 WL 266404, at *4 (E.D. Mich. Jan. 24, 2014) (exposure to undiluted bleach for over 13 minutes in a confined space could amount to sufficiently serious risk of harm). Here, Gill testified that the chemical was intentionally spread in non-diluted quantities. Further, Nurse Sandstrom testified that she immediately noticed the chemicals, noting that it was like, "Oh my goodness. What is going on in here?" (Doc. 114-2, p. 18). She testified to her eyes burning and that the conditions were "overwhelming"

---

[3] Although there may be an issue as to whether the grievances of the inmate witnesses would be admissible at trial, Defendants did not object to the use of the grievances at this stage. *See* FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). *See also Heard v. Shicker*, Case No. 14-cv-1027-JBM, 2018 WL 11272881, at *2-3 (C.D. Ill. Apr. 23, 2018) (statements in grievances were hearsay and not admissible at the summary judgment stage); *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) (hearsay is inadmissible at the summary judgment stage); *Bradford v. Wexford Health Sources, Inc.*, Case No. 16 C 8112, 2020 WL 586810, at *11 (N.D. Ill. Feb. 6, 2020) ("[Plaintiff] is not required to present evidence in an admissible form to escape summary judgment," but must be able to show that he could present the "contents of the report in some admissible form at trial.").

(*Id*. at pp. 19, 45). Inmates in the gallery immediately started coughing and choking; Gill testified that he suffered burning eyes and lungs, as well as chest pains (Doc. 114-1, pp. 41-42, 72). Thus, there are issues of fact as to whether the conditions were sufficiently serious. *See also Weinberg v. Alley*, Case No. 08-cv-480-MP, 2012 WL 967635, at * 9 (N.D. Fla. Jan. 19, 2012) (intentional spray of bleach in non-ventilated cellhouse could amount to an extreme condition). For these reasons, the Court must deny summary judgment as to Defendants Johnson, Rush, and Shane Smith.

Defendants Johnson, Rush, and Shane Smith are also not entitled to qualified immunity at this time. To overcome a defense of qualified immunity, a plaintiff must demonstrate "(1) that the [defendant's] conduct violated his constitutional rights, and (2) that the violated right was clearly established at the time of the alleged misconduct." *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009). "[T]he clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). While a plaintiff is not required to cite "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quotations omitted). The right must be established "not as a broad general proposition." *Reichle v. Howards*, 566 U.S. 658, 665 (2012). Instead, it must be "particularized" such that the "contours of the right are clear to a reasonable official." *Id.*

As previously stated, there are factual disputes as to whether the conditions Gill experienced and the defendant officers' actions amounted to deliberate indifference to Gill's conditions of confinement. As to whether the claim was clearly established, there is

Page 12 of 17

case law to support the claim that exposure to poor air conditions and improper ventilation violates the constitution. *See Board v. Farnham*, 394 F.3d 469, 485-87 (7th Cir. 2005) (right to adequate and healthy ventilation clearly established); *see also Jacobson v. Cathcart*, Case No. 10-13046, 2014 WL 266404, at *4 (E.D. Mich. Jan. 24, 2014) (denying qualified immunity on claim regarding exposure to undiluted bleach).

### 2. Warden Sullivan

As to Warden Sullivan, Gill testified that, prior to the incident with the bleach, he wrote Sullivan on many occasions informing Sullivan that officers were retaliating against him (Doc. 114-1, p. 51). Gill testified that the incident with the bleach was just another way for officers to retaliate against him for filing grievances (*Id.*). But Gill acknowledged at his deposition that the incident with the bleach was in reaction to the inmates in the gallery kicking their cell doors (*Id.* at p. 52). He also acknowledged that Sullivan was not aware of the incident before it occurred and could not have changed the situation that happened (*Id.*). Gill testified that Sullivan played no part in the incident with the bleach, and Sullivan was not in segregation at the time the bleach was spilled (*Id.* at p. 53). There is simply no evidence from which a jury could find that Warden Sullivan participated in the chemical spill.

Instead, Gill testified that he believed Sullivan was liable because it was his staff that spilled the bleach, and Sullivan was in charge of the staff (*Id.*). But in order to be liable under Section 1983, an official must be *personally* involved in the deprivation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). An official is not liable for the knowledge and actions of those they supervise. *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th

Cir. 2011). A supervisor can be liable "if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001)). A supervisor can be liable for "deliberate, reckless indifference to the misconduct of subordinates." *Id.* (citing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

Here, however, there are no allegations suggesting that Warden Sullivan was aware of the officer's actions. Gill alleges that he wrote multiple letters to Warden Sullivan informing him of past incidents of retaliation by staff at Big Muddy, but there is no indication that Gill complained about these specific defendants or their actions prior to the chemical spill. Gill testified that he wrote letters about nurses and their actions regarding his access to water (Doc. 114-1, p. 50). He also testified that he wrote grievances against staff members, which he believed made him a target (*Id.* at pp. 50-51). But there is no evidence to suggest that Warden Sullivan was aware of officers' actions in response to inmates kicking their doors, nor is there any evidence to suggest that Warden Sullivan was aware of conduct by these specific officers such that he condoned it or turned a blind eye. There is simply nothing in the record from which a jury could find that Warden Sullivan acted with deliberate indifference towards Gill's conditions in the cellhouse. Thus, Sullivan's motion for summary judgment as to Count 1 is **GRANTED**.

### B. Retaliation (Count 4)

Further, there is no evidence from which a reasonable jury could find that Derek

Smith and Warden Sullivan retaliated against Gill. In his Complaint, Gill alleged that Derek Smith wrote a false disciplinary ticket against him in retaliation for a grievance Gill previously wrote (Doc. 1, p. 21). At his deposition, Gill also testified that Smith wrote the disciplinary ticket against him in retaliation for a grievance that Gill filed against staff (Doc. 114-1, p. 60). But Gill fails to present any evidence of the grievance he allegedly wrote that was the catalysis for the retaliatory conduct. Nor has he presented any evidence, beyond his own speculation, that the disciplinary charge was in retaliation for a grievance. *See Manuel v. Nalley*, 966 F. 3d 678, 681 (7th Cir. 2020) ("a suspicion is not enough to get past a motion for summary judgment") (internal quotations and citations omitted).

Instead, Gill now argues in his response that his phone conversation with his brother was a private conversation that enjoyed protection by the First Amendment and was the motive for retaliation (Doc. 117, p. 12-13). He argues that his conversation could not have been a conspiracy to assault prison staff because it was merely "blowing smoke" and not directed towards an alleged victim (*Id*. at p. 14). But Gill never raised this claim prior to his responsive brief. His Complaint, as construed by the Court's merit review order, clearly alleged that "Derek Smith retaliated against him for writing a number of grievances by writing a false disciplinary ticket against him." (Doc. 14, p. 3). Gill's Complaint failed to allege that the false disciplinary ticket was in retaliation for the phone call (Doc. 1, p. 21). Thus, the Court will not consider this new claim at the summary judgment stage. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852 (7th Cir. 2017) (If an argument in a summary judgment briefing changes the plaintiff's factual theory,

"the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims.").

Further, there is no evidence from which a jury could find that Gill's statements were protected speech. In order for an inmate's speech to be protected, he must have engaged in "speech in a manner consistent with legitimate penological interests." *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023) (quoting *Watkins v. Kasper*, 599 F.3d 791, 796 (7th Cir. 2010)). Speech is not protected when it is disruptive or confrontational. *Id*. *See also Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) (backtalk and other speech that violated prison discipline is not protected conduct). Although Gill cites to a number of cases regarding outgoing mail, in those cases, the inmates were critical of conditions and individuals at the prison. *See Loggins v. Delo*, 999 F.2d 364 (8th Cir. 1993) (course and offensive language describing an officer in letter to brother); *Todaro v. Bowman*, 872 F.2d 43, 49 (3d Cir. 1989) (letters to ACLU criticizing conditions). But Gill's statements, which he does not deny making, were threatening, and thus not protected by the First Amendment. *See Turner v. Safley*, 482 U.S. 78, 89–90 (1987); *Watkins v. Kasper*, 599 F.3d 791, 796–97 (7th Cir. 2010) (inmate law clerk's speech was unprotected where he publicly challenged supervisor's directives in a manner inconsistent with legitimate interests in discipline and prison library administration); *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (insubordinate remarks that are "inconsistent with the inmate's status as a prisoner or with the legitimate penological objectives of the corrections system" are not protected); *Bridges v. Gilbert*, 557 F.3d 541, 548-552 (7th Cir. 2009). There is simply no evidence from which a jury could find that Gill engaged in protected speech during his

phone call with his brother. Nor is there any evidence to suggest that Defendants sought to retaliate against Gill for protected speech. Accordingly, summary judgment is **GRANTED** as to Derek Smith and Warden Sullivan on Count 4.

## Conclusion

For the reasons stated above, summary judgment is **GRANTED** as to Warden Sullivan in Count 1 and Derek Smith and Warden Sullivan in Count 4. Summary judgment as to the claim in Count 1 against Justin Johnson, Nancy Rush (as special representative for Stewart Rush) and Shane Smith is **DENIED**.

The Court will set a telephonic status conference by separate order for the purpose of discussing a potential referral of this case to mediation and setting a firm trial date.

**IT IS SO ORDERED.**

DATED:   September 15, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**